UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **ANVIL INTERNATIONAL, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ISLAND INDUSTRIES, INC.** )<br>)<br>**Defendant.** )<br>) | CIVIL ACTION<br>NO. _____ |

# COMPLAINT

Plaintiff Anvil International, LLC ("Anvil"), by and through its undersigned attorneys, hereby alleges the following against Defendant Island Industries, Inc. ("Island"):

## NATURE AND BASIS OF ACTION

1. Anvil asserts the following claims against Island for willful theft of trade secrets and other confidential business information.

2. As part of a strategy to counteract its declining performance and eroding market share in the pipe-fitting industry, Island sought trade secrets and confidential information from Anvil and, upon information and belief, Island's other competitors.

3. Anvil learned in February 2020 that Island has been engaged for years in efforts to misappropriate Anvil's trade secrets and confidential business information. Specifically, Anvil learned that Island was communicating with an Anvil Employee (the "Anvil Employee") to obtain Anvil's trade secrets and confidential business information.

4. Prior to February 2020, Island took affirmative steps to hide the fact it was communicating with the Anvil Employee to obtain Anvil's trade secrets and confidential business information. Anvil now knows that Island has been inducing and encouraging the Anvil

employee, since at least 2011, to disclose Anvil's confidential information to Island.

5. Upon information and belief, Island used Anvil's trade secrets and confidential business information obtained from the Anvil Employee to compete unfairly against Anvil, including by selectively relying on some of the collected information (and ignoring other exonerating information) to develop a lawsuit against Anvil, which alleged that Anvil had violated the False Claims Act (the "FCA Action") by importing welded outlets from China. Anvil did not do so. Prior to the deadline for the filing of motions for summary judgment in the FCA Action, and shortly after Anvil's discovery of the theft of its trade secrets and confidential information, Island stipulated for a dismissal with prejudice of its claims in the FCA Action with respect to Anvil.

6. Once Anvil learned of Island's communications with the Anvil Employee, Anvil moved expeditiously to investigate Island's misappropriation of Anvil's trade secrets and confidential information. Having had an opportunity to investigate Island's actions, Anvil is now able to assert the claims contained herein.

## PARTIES AND PERSONS OF INTEREST

7. Anvil is a limited liability company organized and existing under the laws of the State of Delaware. Anvil's headquarters and home office is in Exeter, New Hampshire.

8. Anvil manufactures and provides pipe connections and support products for the mechanical, plumbing, industrial, oil and gas, alternative energy, and fire protection industries. One of the product categories manufactured by Anvil is welded outlets.

9. Island is a corporation organized and existing under the laws of the State of Tennessee. Island's headquarters and home office is in Memphis, Tennessee.

10. Glenn Sanders is the President, Chief Executive Officer, and principal owner of Island.

## JURISDICTION AND VENUE

11. This Court has original federal question jurisdiction over the claims asserted herein pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Anvil's claims arising under state law.

12. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2), because Island has admitted that a substantial part of the events giving rise to Island's predicate acts (and for which Island was engaging in unlawful collection of trade secrets and confidential information) occurred in this judicial District, and pursuant to 28 U.S.C. § 1391(b)(1), because the activities of Island in this judicial District subject Island to personal jurisdiction within this District pursuant to 28 U.S.C. §§ 1391(c) and 1391(d).

## FACTS GIVING RISE TO THIS ACTION

13. Island filed the FCA Action on June 13, 2017, and the FCA Action was unsealed on January 30, 2019.

14. Island filed a First Amended Complaint on July 10, 2019. Anvil filed an Answer to the First Amended Complaint on September 17, 2019.

15. Island served Initial Disclosures in the FCA Action on October 18, 2019.

16. Island served Amended Initial Disclosures on November 13, 2019.

17. Island did not identify the Anvil Employee in Island's Initial Disclosures or Amended Initial Disclosures in the FCA Action.

18. Mr. Sanders, the Chief Executive Officer of Island, was deposed by Anvil's counsel on February 13, 2020 in the FCA Action.

19. In light of the deposition testimony provided by Mr. Sanders, Anvil conducted an internal investigation and confirmed that Island had obtained Anvil's trade secrets and confidential business information.

20. As part of its internal investigation, Anvil established that the Anvil Employee was not an Island employee or a consultant for Island. Nevertheless, Island paid the Anvil Employee personally for services rendered to Island.

## ISLAND'S MISAPPROPRIATION AND UNAUTHORIZED USE OF ANVIL'S TRADE SECRETS

21. Upon information and belief, the Anvil Employee has been providing Anvil's trade secrets and confidential business information to Mr. Sanders and Island since at least 2011.

22. Upon information and belief, Island actively solicited Anvil's trade secrets and confidential business information from the Anvil Employee.

23. Upon information and belief, Island actively sought Anvil's trade secrets and confidential business information to gain competitive intelligence.

24. Anvil's confidential business information and trade secrets that were disclosed improperly to Island included manufacturing details, internal communications about pricing, business strategies, sales information, customer lists, and incentive plans for sales people.

25. The Anvil Employee was not authorized to provide the trade secrets and confidential business information to Island.

26. The Anvil Employee owed a duty to Anvil to maintain the confidentiality of the trade secrets and confidential business information that were provided to Island.

27. Island is Anvil's competitor.

28. Anvil's trade secrets and confidential information that were supplied to Island provided Island with an unfair competitive advantage.

### Island Received Anvil's Manufacturing Trade Secrets

29. Island solicited information from the Anvil Employee about Anvil's manufacturing facilities.

30. The Anvil Employee, in fact, did supply manufacturing information that he learned from his visit to Anvil's manufacturing facilities.

### Island Received Anvil's Confidential Customer Information

31. Upon information and belief, Island directly solicited Anvil's sales information from the Anvil Employee.

32. On May 9, 2014, the Anvil Employee sent Island confidential business information about Anvil's sales to specific customers. Upon information and belief, this confidential business information would provide Island with a competitive advantage in making bids for product and services with Anvil's customers.

33. On May 23, 2016, the Anvil Employee sent Island customer pricing information. Upon information and belief, this confidential business information would provide Island with a competitive advantage in making bids for product and services with Anvil's customers.

### Island Received Anvil's Internal Compensation And Sales Information

34. Upon information and belief, Island directly solicited Anvil's compensation information from the Anvil Employee.

35. The Anvil Employee sent Island information on April 18, 2016 that contained compensation and incentive plans for Anvil's sales staff. Upon information and belief, this confidential business information would provide Island with a competitive advantage in making bids for products and services with Anvil's customers or in trying to interfere with Anvil's employees.

36. On May 10, 2016, the Anvil Employee sent Island sales information intended for Anvil's sales managers. Upon information and belief, this confidential business information would provide Island with a competitive advantage in making bids for product and services with Anvil's customers or in trying to interfere with Anvil's employees.

### Island Received Anvil's Pricing Information

37. Upon information and belief, Island directly solicited Anvil's pricing information from the Anvil Employee.

38. On May 13, 2016, the Anvil Employee sent Island a copy of Anvil's internal communication about an upcoming Anvil price increase.

39. Island also received confidential business information relating to Anvil's strategies relating to Anvil competitors, including an August 30, 2018 email that contained internal Anvil communications about Anvil's prices and the potential impact of the prices on Anvil's competitors.

40. The Anvil Employee continued to supply Mr. Sanders with Anvil's pricing information even after the FCA Action was unsealed in 2019.

### Island Received Information In An Apparent Effort To Develop A Claim Against Anvil In The FCA Action

41. Upon information and belief, Island directly solicited information from the Anvil Employee to be used in and in an effort to develop a claim against Anvil in the FCA Action.

42. The Anvil Employee supplied Mr. Sanders with confidential information and trade secrets during the period when Island would have been preparing its claims in the FCA Action.

43. Some of the information that the Anvil Employee supplied Island contradicted the basis for Island's claims against Anvil in the FCA Action. For example, on July 27, 2016, the Anvil Employee sent an email to Mr. Sanders that contradicts Island's allegations asserted in the FCA Action.

44. Anvil incurred significant costs and fees in defending the FCA Action.

45. On March 18, 2020, Island submitted a Joint Stipulation to dismiss Anvil from the FCA Action.

### Island Did Not Have The Right To Possess Anvil's Confidential Information

46. Upon information and belief, Island knew that Anvil was unaware that the Anvil Employee was supplying Anvil's confidential business information to Island.

47. Upon information and belief, Island knew that Anvil was unaware that the Anvil Employee was being compensated by Island for services rendered to Island.

48. Upon information and belief, Island asked the Anvil Employee to provide it with Anvil's confidential business information.

49. Upon information and belief, Island asked the Anvil Employee to gather information for Island.

50. Upon information and belief, Island used Anvil's confidential business information provided by the Anvil Employee to Island's benefit.

### Island's Actions Have Caused Harm To Anvil

51. Some of Anvil's confidential business information involves trade secrets, including but not limited to manufacturing activities, pricing information, sales information, customer lists, and incentive plans.

52. Island's possession of Anvil's trade secrets caused actual harm to Anvil.

53. Island's possession of Anvil's trade secrets also harmed Anvil by creating unjust enrichment for Island.

54. Island's possession of Anvil's trade secrets further harmed Anvil, because Island has not paid a reasonable royalty for the disclosure or use of Anvil's trade secrets.

55. Upon information and belief, Island's possession of Anvil's trade secrets allowed Island unfairly to compete with Anvil.

56. Upon information and belief, Island's possession of Anvil's trade secrets allowed Island to interfere with Anvil's ongoing and future relationships with its customers.

57. For example, upon information and belief, Island was able to use Anvil's trade secrets to determine certain jobs on which it could bid.

## CAUSES OF ACTION

## COUNT I: 18 U.S.C. § 1836(b) -- INJUNCTION

58. Anvil realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 57 above.

59. Anvil's confidential business information in Island's possession, including but not limited to manufacturing activities, pricing information, sales information, customer lists, and incentive plans, are trade secrets.

60. Anvil is the owner of these trade secrets, having rightful legal or equitable title.

61. These trade secrets relate to products used in interstate or foreign commerce.

62. Anvil's trade secrets were provided to Island without Anvil's consent.

63. The Anvil Employee was not authorized to provide the trade secrets to Island.

64. Island knew, or should have known, that Anvil's trade secrets were acquired by improper means.

65. Island's continued possession of Anvil's trade secrets continues to harm Anvil because Island could use this information to unfairly compete with Anvil and harm Anvil.

66. For this reason, Island should be enjoined from using Anvil's trade secrets, be required to return them to Anvil, and certify that all copies of Anvil's trade secrets have been destroyed (or otherwise sequestered by counsel).

## COUNT II: 18 U.S.C. § 1836(b) -- DAMAGES

67. Anvil realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 66 above.

68. Upon information and belief, Island acted willfully and maliciously in misappropriating Anvil's trade secrets by directly soliciting Anvil's trade secrets for a number of years for Island's own benefit.

69. Anvil has been damaged by Island's violations of 18 U.S.C. § 1836(b) in an amount to be determined at trial.

## COUNT III:
## TENN. CODE. ANN. § 47-25-1701, et. Seq.

70. Anvil realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 69 above.

71. Anvil had certain trade secrets, including but not limited to manufacturing activities, pricing information, sales information, customer lists, and incentive plans.

72. The Anvil Employee provided Anvil's trade secrets to Island.

73. At the time that Island received Anvil's trade secrets, Anvil worked with Island on some projects.

74. Anvil had no reason to believe that Island was obtaining Anvil's trade secrets.

75. Anvil took reasonable steps to protect its trade secrets.

76. Anvil's trade secrets have independent economic value from not being generally known or readily ascertainable by proper means by other persons.

77. Island used Anvil's trade secrets for Island's benefit.

78. Anvil has been damaged by Island's violations of Tenn. Code Ann. § 47-25-1701, et seq.

## COUNT IV:  18 U.S.C. § 1836(b)(3)(D); TENN. CODE ANN. § 47-25-1705

79. Anvil realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 78 above.

80. Upon information and belief, Island acted willfully and maliciously in misappropriating Anvil's trade secrets by directly soliciting Anvil's trade secrets for a number of years for Island's own benefit.

81. Pursuant to 18 U.S.C. § 1836(b)(3)(D) and Tenn. Code Ann. § 47-25-1705, Anvil is entitled to recover from Island all of the costs and attorneys' fees that Anvil has incurred and continues to incur as a result of Island's actions, and the failure and refusal of Island to acknowledge wrongdoing and/or remedy the damage caused by its actions.

## PRAYER FOR RELIEF

WHEREFORE, Anvil respectfully prays that this Court:

1. Issue a permanent injunction that requires Island to return all copies of Anvil's trade secrets to Anvil and that enjoins Island from using Anvil's trade secrets;

2. Award Anvil monetary damages against Island for violations of 18 U.S.C. § 1836(b) and Tenn. Code Ann. § 47-25-1701, et seq., in an amount to be proven at trial;

3. Award Anvil exemplary monetary damages in an amount not more than two times the amount of the damages for Island's willful and malicious violations of 18 U.S.C. § 1836(b) and Tenn. Code Ann. § 47-25-1701, et seq., in an amount to be proven at trial;

4. Award Anvil its attorney's fees, costs, and expenses pursuant to 18 U.S.C. § 1836(b)(3)(D) and Tenn. Code Ann. § 47-25-1705; and

5. Grant Anvil such other relief as the Court deems necessary and appropriate.

DATED: APRIL 16, 2020

KING & SPALDING LLP
By: /s/ James K. Vines

James K. Vines
Tennessee Bar No. 012329
jvines@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone: +1 404 572 4600
Facsimile: +1 404 572 5100

J. Michael Taylor
(pro hac vice to be filed)
jmtaylor@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:    +1 202 737 0500
FACSIMILE: +1 202 626 3737

Christopher C. Burris
(pro hac vice to be filed)
cburris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone: +1 404 572 4600
Facsimile: +1 404 572 5100

Daniel Schneiderman
(pro hac vice to be filed)
dschneiderman@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:    +1 202 661 7847
FACSIMILE: +1 202 626 3737

Stephen P. Cummings
(pro hac vice to be filed)
scummings@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone: +1 404 572 4600
Facsimile: +1 404 572 5100

Attorneys for Defendant
ANVIL INTERNATIONAL, LLC