**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ASC ENGINEERED SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:20-cv-02284-JPM-cgc |
| v. | ) | |
| | ) | |
| ISLAND INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**JURY INSTRUCTIONS**

## I.      INTRODUCTION

Ladies and gentlemen of the jury, we have now come to the point in the case when it is my duty to instruct you on the rules of law that you must follow and apply in deciding this case.

As jurors it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.

You must not be influenced by sympathy, bias, prejudice, or passion for one side or the other.

You must follow the law as I explain it to you whether you agree with it or not. You are not to single out any particular part of the instructions and ignore the rest, but you are to consider all the instructions as a whole and regard each in the light of all the others.

All of the instructions are equally important. The order in which these instructions are given has no significance. You must follow all of the instructions and not single out some and ignore others.

1

II.      **PARTIES**

This case involves a dispute between ASC Engineered Solutions, LLC ("ASC" or "Anvil") on the one hand and Island Industries, Inc. ("Island") on the other hand.  The dispute relates to the alleged misappropriation or theft of ASC's trade secrets by Island.

When this suit was filed ASC was called Anvil International, LLC.  On April 5, 2021, for reasons unrelated to this dispute, Anvil changed its legal operating name so that it is now known as ASC.  For purposes of this case, you should consider references to Anvil and ASC to be referring to the same company without a distinction.

Anvil manufactures and provides pipe connections and support products for the mechanical, plumbing, industrial, oil and gas, alternative energy, and fire protection industries.

Island manufactures pipe fittings and acts as a pipe distributor to customers that buy fittings and value added services.

## III.     GENERAL INSTRUCTIONS

A.  <u>Organization Not to Be Prejudiced</u>

In this case, both Anvil and Island are business organizations and/or corporations.  The fact that the parties in the case are organizations must not influence you in your deliberations or in your verdict.

You may not discriminate between businesses, including corporations, and natural individuals.  Each is a person in the eyes of the law, and each is entitled to the same fair and impartial consideration and to justice by the same legal standards.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life.  An organization is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, governments, and government entities, stand equal before the law, and are to be dealt with as equals in a court of justice.

It is your duty to decide this case with the same impartiality you would use in deciding a case between individuals.

B.  <u>Organizations/Corporations Act Through Their Authorized Employees or Agents</u>

While Anvil and Island are the parties in this case, that does not mean that only the actions of each business organization as one body are to be considered by you in determining its claims or defenses.  A corporation or business organization acts not only through the policies and decisions it makes, but also through its designated supervisory employees, such as its managers, officers, and others designated by the corporation to act on its behalf.

Pay close attention to the remainder of these instructions.  As you apply subsequent portions of these instructions, you will have to determine whether or not individual employees, managers, or agents were authorized to act on behalf of the party you are considering.

C.  <u>Geographic Ties Are Not Relevant</u>

You have heard the fact that certain witnesses live or work in or around Memphis, Tennessee.  In deciding this case, however, you should not give weight to such matters.

A party's or witness's geographic ties must not affect your decision in any way.  All persons stand equal before the law and must be treated as equals.  Justice is not different for persons from Memphis, Tennessee than it is for persons from other parts of the country.  You must, therefore, apply the law as I give it to you without considering a person's geographic ties.

D.  Burden of Proof and Consideration of the Evidence

I will now instruct you with regard to where the law places the burden of making out and supporting the facts necessary to prove the theories in the case.

When a party denies the material allegations of the other party's claims, the law places upon the party bringing a claim the burden of supporting and making out each element of each claim by the greater weight or preponderance of the evidence.

The preponderance of the evidence means that amount of factual information presented to you in this trial which is sufficient to cause you to believe that an allegation is probably true.  In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief.  If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving that issue must fail.

You must consider all the evidence pertaining to every issue, regardless of which party presented it.

E.  <u>Credibility and Weighing of Evidence</u>

You, the members of the jury, are judges of the facts concerning the controversy involved in this lawsuit.  In order for you to determine what the true facts are, you are called upon to weigh the testimony of every witness who appears before you and to give the testimony of the witnesses the weight, faith, credit, and value to which you think it is entitled.

You should consider the manner and demeanor of each witness while on the stand.

You must consider whether the witness impressed you as one who was telling the truth or one who was telling a falsehood, and whether or not the witness was a frank witness.  You should consider the reasonableness or unreasonableness of the testimony of the witness; the opportunity or lack of opportunity of the witness to know the facts about which he or she testified; the intelligence or lack of intelligence of the witness; the interest of the witness in the result of the lawsuit, if any; the relationship of the witness to any of the parties to the lawsuit, if any; and whether the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.

These are the rules that should guide you, along with your common judgment, your common experience, and your common observations gained by you in your various walks of life, in weighing the testimony of the witnesses who have appeared before you in this case.

If there is a conflict between the testimony of different witnesses, it is your duty to reconcile that conflict if you can, because the law presumes that every witness has attempted to and has testified to the truth.    But if there is a conflict in the testimony of the witnesses that you are not able to reconcile in accordance with these instructions, then you must determine which of the

witnesses you believe have testified to the truth and which ones you believe have testified to a falsehood.

Immaterial discrepancies do not affect a witness's testimony, but material discrepancies do. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

The preponderance of the evidence in a case is not determined by the number of witnesses testifying to a particular fact or a particular set of facts. Rather, it depends on the weight, credit, and value of the total evidence on either side of the issue, and of this you jurors are the exclusive judges.

If in your deliberations you come to a point where the evidence is evenly balanced and you are unable to determine which way the scales should turn on a particular issue, then you must find against the party upon whom the burden of proof has been cast in accordance with these instructions.

Remember, you are the sole and exclusive judges of the credibility or believability of the witnesses who testified in this case.

Ultimately, you must decide which witnesses you believe and how important you think their testimony was. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of any person's testimony.

F.  Impeachment – Inconsistent Statements or Conduct

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves; you may, of course, accept any part you decide is true.  This is all for you, the jury, to decide.

An act or omission is done "knowingly" if committed voluntarily and intentionally, and not because of mistake or accident, or some other innocent reason.

G. <u>Direct and Circumstantial Evidence</u>

There are two kinds of evidence: direct and circumstantial.  Direct evidence is testimony by a witness about what a witness personally saw, heard, or did.  Circumstantial evidence is indirect evidence—that is, proof of one or more facts from which one can find another fact.

You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

H. <u>Evidence</u>

You are to decide this case only from the evidence that was received—that is, evidence that was presented for your consideration during the trial.  The evidence consists of:

1.    The sworn testimony of the witnesses who have testified;

2.    The exhibits that were received and marked as evidence;

3.    Any facts to which the lawyers for both sides have agreed or stipulated.

I.   <u>"Inferences" Defined</u>

Although you are to consider only the evidence in this case, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

Inferences are deductions or conclusions that reason and common sense lead you to make from facts established by the evidence in the case.

J.   <u>Statements and Arguments of Counsel</u>

You must not consider as evidence any statements of counsel made during the trial.

If, however, counsel for the parties have stipulated to any fact, or any fact has been admitted by counsel, you will regard that fact as being conclusively established.

As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection, and you must assume that the answer would be of no value to you in your deliberations.

You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the Court.  Such matter is to be treated as though you had never known it.

You must never speculate to be true any insinuation suggested by a question asked of a witness.  A question is not evidence.  It may be considered only as it supplies meaning to the answer.

K.  <u>Totality of the Evidence</u>

You should consider all of the evidence admitted in the case.  Testimony and documents which the Court allowed into evidence over a hearsay objection may be considered by you as evidence, on the same basis as all other evidence, for the purpose for which it was admitted.  For example, matters and things that a decision maker is told may be considered for the purpose of explaining the basis upon which that person acted or made a decision.  This, of course, is all for you, the jury, to decide.

L.   Juror Notes

If you took notes, please remember that your notes are not evidence.  You should keep your notes to yourself.  They may only be used to help refresh your personal recollection of the evidence in this case.  It is the evidence itself, and not your notes, that you should discuss with the other jurors.

If you cannot recall a particular piece of evidence, you should not be overly influenced by the fact that someone else on the jury appears to have a note regarding that evidence.

Remember, it is your recollection and the collective recollection of all of you upon which you should rely in deciding the facts in the case.

M.  <u>Comments by the Court</u>

During the course of this trial, I occasionally asked questions of a witness in order to bring out facts not then fully covered in the testimony.  Please do not assume that I hold any opinion on the matters to which my questions may have related.  Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

On the other hand, you are required to follow the Court's instructions on the law, whether you agree with these instructions or not.

N.  <u>Opinion Testimony</u>

You have heard the testimony of Robert Fenili who rendered an opinion in this case.

A witness is allowed to express his or her opinion on those matters about which the witness has special knowledge, training, or experience.  Opinion testimony is presented to you on the theory that someone who is experienced or knowledgeable in a field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing each opinion witness's testimony, you may consider his qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept a witness's testimony merely because he is an opinion witness.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

O.  <u>Demonstrative Charts and Summaries</u>

Certain demonstrative charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case. These demonstrative charts and summaries are not themselves evidence or proof of any facts.  If the demonstrative charts or summaries do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard the charts or summaries.

P.   <u>Background on the False Claims Act</u>

You have heard testimony regarding the False Claims Act (the "FCA").  A FCA lawsuit was filed by Island against Anvil in the United States District Court for the Central District of California, entitled the *United States ex. rel Island Properties, Inc. v. Vandewater International, Inc., et al.* (the "FCA Action").  It is my duty to tell you what the law is and how the law operates. If a lawyer or party has told you that the law is different from what I tell you it is, you must, of course, take the law as I give it to you.  As part of that duty, I will provide you with the background on the FCA to assist you in your duties.

The FCA provides that any person who knowingly submitted false claims to the government is liable for treble the government's damages plus a civil penalty for each false claim. The FCA creates liability for any person who knowingly submits a false claim to the government or causes another to submit a false claim to the government or knowingly makes a false record or statement to get a false claim paid by the government.  The FCA also provides liability where one acts improperly – not to get money from the government, but to avoid having to pay money to the government.

The FCA allows private persons to file suit for violations of the FCA on behalf of the government.  A suit filed by an individual on behalf of the government is known as a "*qui tam*" action, and the person bringing the action is referred to as a "relator."  The FCA provides that a *qui tam* complaint must be filed with the court under seal.  The complaint and a written disclosure of all the relevant information known to the relator must be served on the U.S. Attorney for the judicial district where the *qui tam* action was filed and on the Attorney General of the United States (both officials of the U.S. Department of Justice).

The *qui tam* complaint is initially sealed for 60 days.  The government is required to investigate the allegations in the complaint; if the government cannot complete its investigation in

60 days, it can seek extensions of the seal period while it continues its investigation. The government must then notify the court that it is proceeding with the action (generally referred to as "intervening" in the action) or declining to take over the action, in which case the relator can proceed with the action. If the relator proceeds with the action and seeks to settle or dismiss a *qui tam* action, it must obtain the consent of the government.

If the government intervenes in the *qui tam* action, the relator is entitled to receive between 15 and 25 percent of the amount recovered by the government through the *qui tam* action. If the government declines to intervene in the action, the relator's share is increased to 25 to 30 percent. The relator's share is paid to the relator by the government out of the payment received by the government from the defendant. If a *qui tam* action is successful, the relator also is entitled to legal fees and other expenses of the action by the defendant.

## IV.    STATEMENT OF THE CASE AND STIPULATED FACTS

A.  <u>Statement of the Case</u>

Anvil alleges that Island misappropriated Anvil's trade secrets and confidential information.  Specifically, Anvil alleges that Island obtained Anvil's trade secrets relating to Anvil's customers, information about Anvil's customers, monthly and sales reports about Anvil's sales representatives, and detailed descriptions of projects on which Anvil was working.

Island denies Anvil's allegations.  Specifically, Island denies that the information that it obtained was Anvil's trade secrets or confidential business information.  Island also denies that Anvil took reasonable steps to protect its alleged trade secrets and confidential business information.

B. <u>Stipulated Facts</u>

Before the trial of this case, the parties agreed to the truth of certain facts. As a result of this agreement, Anvil and Island entered into certain stipulations in which they agreed that the stipulated facts could be taken as true without the parties presenting further proof on the matter. This procedure is often followed to save time in establishing facts that are undisputed.

Facts stipulated to by the parties in this case include the following:

1.      Anvil is headquartered in Exeter, New Hampshire. Anvil is a limited liability company that is engaged in interstate commerce because it sells and markets its products throughout the United States and Canada.

2.      Anvil manufactures and provides pipe connections and support products for the mechanical, plumbing, industrial, oil and gas, alternative energy, and fire protection industries. One of the product categories manufactured by Anvil is welded outlets.

3.      Anvil has two relevant sales lines for its welded outlet products – Merit and SPF.

4.      Island is headquartered in Memphis, Tennessee. The company has two shareholders and has less than 10 employees. Island has been in existence for approximately 30 to 35 years.

5.      Island manufactures, fabricates, and sells pipe and pipe fittings.

6.      Both Anvil and Island manufacture and sell welded outlets.

7.      Glenn Sanders is the President and CEO of Island. Mr. Sanders is the 90% shareholder of Island. David Barnett holds the remaining 10% of Island's shares.

8.      Island's chief salesperson is Mark Woehrel.

9.      An Anvil salesperson (the "Anvil Employee") shared information relating to Anvil, including Anvil's customers, prices, and manufacturing location with Mr. Sanders.

10.    Island also was a customer of Anvil.

11.    Mr. Sanders has known the Anvil Employee for approximately 20 years.

12.    Mr. Sanders and the Anvil Employee are friends.

13.    Mr. Sanders and the Anvil Employee also attend the same church.

14.    Mr. Sanders shared the Anvil business information he received from the Anvil
       Employee with others at Island, including Mr. Woehrel and Mr. Barnett.

15.    The Anvil Employee is no longer employed by Anvil.

16.    Mr. Sanders was receiving information on Island's competitors since at least 2013.

17.    On June 19, 2013, Mr. Sanders obtained information about [prices for Anvil's Merit
       welded outlets].

18.    Mr. Sanders obtained the price information about [Anvil's Merit welded outlets
       from Hank Zawada].

19.    Mr. Sanders understood that Hank Zawada [obtained the price information about
       Anvil's Merit welded outlets as a result of Mr. Zawada's work with Vandewater].

20.    Vandewater is Anvil's competitor with respect to the sale of welded outlets.

21.    Vandewater is Island's competitor with respect to the sale of welded outlets.

22.    Island filed a Complaint under the False Claims Act in the United States District
       Court for the Central District of California, entitled the *United States, ex. Rel.,
       Island Industries, Inc., Plaintiff vs. Vandewater International, Inc; Neil Reubens;
       Anvil International LLC; Sigma Corporation; Smith-Cooper International; Allied
       Rubber & Gasket Co.; and John Does No. 1 through 10, Defendants,* under Case
       No. 2:17- cv-04393-RGK-ks (the "FCA Action").

23.    The First Amended Complaint for Violations of the False Claims Act filed July 10,
       2019, as well as the Answers filed by Anvil and Smith-Cooper in the FCA Action

respectively on September 17, 2019, speak for themselves.  As such, paragraphs in the Complaints and the Answers may be read to the jury.

24. Island filed the FCA Action on June 13, 2017, and the FCA Action was unsealed on January 30, 2019.

25. Island met with the United States Department of Commerce ("Commerce") to discuss concerns that some companies were importing welded outlets from China without paying requisite anti-dumping duties.  Anvil also appeared before Commerce and held itself out to be a United States manufacturer of welded outlets.

26. Island was aware at the time that it filed the Amended First Complaint that Anvil had appeared before Commerce and held itself out to be a United States manufacturer of welded outlets.

27. Parties in civil litigation are required to make certain disclosures under the Federal Rules of Civil Procedure (the "Federal Rules").  Specifically, parties have to make initial disclosures that include "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

28. Island served Initial Disclosures in the FCA Action on October 18, 2019.

29. Anvil filed its Corporate Disclosure Statement in the FCA Action on May 24, 2019 and served Initial Disclosures in the FCA Action on October 18, 2019.

30. On March 18, 2020, Island and Anvil filed a joint stipulation to dismiss the claims that Island asserted against Anvil in the FCA Action and reserved Anvil's right to bring a misappropriation of trade secrets claim against Island.

31. On March 18, 2020, Anvil sought leave of court in the FCA Action to amend its

responsive pleading to assert a counterclaim against Island for the misappropriation of its trade secrets.

32.     On March 21, 2020, the court in the FCA Action denied Anvil's motion to amend as moot, because the case had been dismissed with prejudice.   The court also noted that even if it were to entertain Anvil's motion on its merits, it would not find good cause to permit Anvil to amend its Answer to assert a counterclaim at that late stage of the FCA Action considering that discovery was closed and trial, at the time, was scheduled to begin in approximately two months.

33.     Anvil filed suit in this Court on April 16, 2020.

## V.      GENERAL INSTRUCTIONS ON THE APPLICABLE LAW

A.  Legal Theories of the Case

Turning now to the legal theories in the case, it is my duty to tell you what the law is.  If a lawyer or party has told you that the law is different from what I tell you it is, you must, of course, take the law as I give it to you.  That is my duty.  But it is your duty, and your duty alone, to determine what the facts are and after you have determined what the facts are, to apply the law to those facts, free from any bias, prejudice, or sympathy, either one way or the other.

B. <u>Nature of the Action</u>

In this case, Anvil brings two claims against Island.  You must consider each claim separately and decide each claim without regard to your determination as to any other claim.

The claims by Anvil against Island are for two counts of misappropriation of trade secrets – one claim relating to the federal Defend Trade Secrets Act ("DTSA") and one claim relating to the Tennessee Uniform Trade Secrets Act ("TUTSA").

The elements for violations of the DTSA and the TUTSA are similar.

A party that misappropriates a trade secret can violate both federal and state laws as long as all of the essential elements are met.

I will instruct you on the applicable law for these claims.  I will first instruct you on the law for Island's alleged violations of the DTSA.  I will then instruct you on the law for Anvil's claims for misappropriation of trade secrets under TUTSA.

C.  <u>DTSA – Misappropriation of Trade Secrets</u>

I will now instruct you about Anvil's first theory of relief: misappropriation of trade secrets under the federal DTSA.  In order to prevail on its misappropriation of trade secrets claim, Anvil has the burden of proving each of the following facts by a preponderance of the evidence:

1.      The existence of a trade secret;

2.      That Island misappropriated that trade secret; and

3.      The trade secret related to a product or service used in, or intended for use in, interstate or foreign commerce.

I will now explain these elements to you.

D.  <u>DTSA First Element – Existence of a Trade Secret</u>

The DTSA defines trade secret as follows:

The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

1.      The owner thereof has taken reasonable measures to keep such information secret; and

2.      The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

I will now further explain these requirements.

E.   <u>DTSA First Element – (1) Reasonable Efforts to Maintain Secrecy</u>

Anvil is required to take reasonable steps under the circumstances to protect any information which it claims is its trade secret(s).  This does not require absolute secrecy or that Anvil use all conceivable efforts to maintain secrecy.  Additionally, the information may be disclosed to employees involved in Anvil's use of the information, or to non-employees, if the people to whom the disclosure was made are obligated to keep the information secret.

If Anvil did not take reasonable steps to protect the secrecy of certain information, that information does not qualify as a trade secret and you must find for Island as to any trade secret claim as to which you make that determination.  This, of course, is for you, the jury, to decide.

F.   DTSA First Element – (2) Independent Economic Value Derived from Secrecy

Information that gives the owner or possessor of the information a competitive advantage in the marketplace over those who do not have knowledge of the information could be considered to "derive independent economic value" from not being generally known or readily ascertainable by proper means.

If certain information could be readily learned by legitimate methods, no one may claim it as a trade secret.  For example, if the information is readily ascertainable by means such as by reading publicly available literature or examining publicly available products, or if the information is commonly known in an industry, then the information cannot qualify as a "trade secret." However, the fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.  Hence, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret.

Information that was acquired through a confidential relationship may be a trade secret even if the information potentially could have otherwise been obtained through independent research.  This is particularly true where acquisition of the information through independent research would be difficult, costly, or time consuming.

G. <u>DTSA First Element – Factors in Determining the Existence of a Trade Secret</u>

In determining whether a particular piece of information qualifies as a trade secret, you may consider the following:

1.      The extent to which the information is known outside of the business;

2.      The extent to which it is known by employees and others involved in the business;

3.      The extent of measures taken by the business to guard the secrecy of the information;

4.      The value of the information to the business and to its competitors;

5.      The amount of money or effort expended by the business in developing the information;

6.      The ease or difficulty with which the information could be properly acquired or duplicated by others.

H. <u>DTSA First Element – Anvil's Alleged Trade Secrets</u>

Anvil has identified the following alleged trade secrets, which it claims Island misappropriated, resulting in detriment to Anvil:

1.      Customer Lists;

2.      Price and/or Discount Information;

3.      Price Quotes;

4.      Sales Leads;

5.      Excess and Idle Reports;

6.      Third Party Database Information;

7.      Strategic Information and Compensation Data; and

8.      Manufacturing and Production Data.

Anvil alleges that each of the categories above are trade secrets.  In addition, Anvil alleges that this information can be combined and that the compiled information when considered in the aggregate is also a trade secret.

Island denies that this information is protectable as a trade secret and further denies that it misappropriated any of the information.  If you find that Anvil has established, by a preponderance of the evidence, each of the facts necessary to prove the existence of one or more of its alleged trade secrets, you must then determine whether Island misappropriated those trade secrets.

I.   <u>DTSA Second Element – Misappropriation of the Trade Secret</u>

There are several ways in which a party may be found to have misappropriated a trade secret under the law.  For purposes of this case, however, misappropriation means the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

Therefore, Anvil must prove by a preponderance of the evidence that Island (1) acquired or used a trade secret, (2) did so without Anvil's express or implied consent, and (3) did so while knowing or having reason to know that Island acquired knowledge of the trade secret using improper means or under circumstances that gave rise to a duty to maintain the trade secret's secrecy or limit its use.

To "know" means to have actual knowledge of or to be aware of some fact.

To have "reason to know" means to have actual knowledge or knowledge sufficient that a reasonable person would have inquired further.

Additionally, under the law, more than one person can rightfully possess a trade secret.

If you find by the greater weight or preponderance of the evidence that Island misappropriated a trade secret which Anvil owned or possessed, the second element is satisfied.

J.   <u>DTSA Third Element – Interstate Commerce</u>

The parties have stipulated that the information that Anvil alleges was misappropriated involves or relates to interstate commerce.  As such, Anvil has established the third element.

Therefore, if you find that Anvil misappropriated a trade secret, you will have found Island liable for trade secret misappropriation under the federal DTSA.

K.  <u>TUTSA – Misappropriation of Trade Secrets</u>

I will now instruct you about Anvil's second theory of relief: misappropriation of trade secrets under the TUTSA.  In order to prevail on its misappropriation of trade secrets claim, Anvil has the burden of proving each of the following facts by a preponderance of the evidence:

1.      The existence of a trade secret;

2.      That Island misappropriated that trade secret; and

3.      That the misappropriation resulted in detriment to Anvil.

I will now explain these elements to you.

L.  <u>TUTSA First Element – Existence of a Trade Secret</u>

A trade secret is any information, without regard to form, including, but not limited to technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan, that:

1.      Derives independent economic value, either actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.      Is the subject of efforts that are reasonable under the circumstances to maintain the information's secrecy.

The law does not require Anvil to prove that it owns the asserted trade secret information. It is enough for Anvil to show that it has possession of the information and that the information satisfies the requirements set out above.

I will now further explain these requirements.

M. <u>TUTSA First Element – Independent Economic Value Derived from Secrecy</u>

Information that gives the owner or possessor of the information a competitive advantage in the marketplace over those who do not have knowledge of the information could be considered to "derive independent economic value" from not being generally known or readily ascertainable by proper means.

If certain information could be readily learned by legitimate methods, no one may claim it as a trade secret.  For example, if the information is readily ascertainable by means such as by reading publicly available literature or examining publicly available products, or if the information is commonly known in an industry, then the information cannot qualify as a "trade secret." However, the fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.  Hence, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret.

Information that was acquired by Anvil through a confidential relationship may be a trade secret even if the information potentially could have otherwise been obtained through independent research.  This is particularly true where acquisition of the information through independent research would be difficult, costly, or time consuming.

N.  <u>TUTSA First Element – Reasonable Efforts to Maintain Secrecy</u>

Anvil is required to take reasonable steps under the circumstances to protect any information which it claims is its trade secret(s).  This does not require absolute secrecy or that Anvil use all conceivable efforts to maintain secrecy.  Additionally, the information may be disclosed to employees involved in Anvil's use of the information, or to non-employees, if the people to whom the disclosure was made are obligated to keep the information secret.

If Anvil did not take reasonable steps to protect the secrecy of certain information, that information does not qualify as a trade secret and you must find for Island as to any trade secret claim as to which you make that determination.  This, of course, is for you, the jury, to decide.

O.  <u>TUTSA First Element – Factors in Determining the Existence of a Trade Secret</u>

In determining whether a particular piece of information qualifies as a trade secret, you may consider the following:

1.   The extent to which the information is known outside of the business;

2.   The extent to which it is known by employees and others involved in the business;

3.   The extent of measures taken by the business to guard the secrecy of the information;

4.   The value of the information to the business and to its competitors;

5.   The amount of money or effort expended by the business in developing the information;

6.   The ease or difficulty with which the information could be properly acquired or duplicated by others.

P.   <u>TUTSA First Element – Anvil's Alleged Trade Secrets</u>

Anvil has identified the following alleged trade secrets, which it claims Island misappropriated, resulting in detriment to Anvil:

1.      Customer Lists;

2.      Price and/or Discount Information;

3.      Price Quotes;

4.      Sales Leads;

5.      Excess and Idle Reports;

6.      Third Party Database Information;

7.      Strategic Information and Compensation Data; and

8.      Manufacturing and Production Data.

Anvil alleges that each of the categories above are trade secrets.  In addition, Anvil alleges that this information can be combined and that the compiled information when considered in the aggregate is also a trade secret.

Island denies that this information is protectable as a trade secret and further denies that it misappropriated any of the information.  If you find that Anvil has established, by a preponderance of the evidence, each of the facts necessary to prove the existence of one or more of its alleged trade secrets, you must then determine whether Island misappropriated those trade secrets.

Q.  <u>TUTSA Second Element – Misappropriation of the Trade Secret</u>

There are several ways in which a party may be found to have misappropriated a trade secret under the law.  For purposes of this case, however, misappropriation means the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

Therefore, Anvil must prove by a preponderance of the evidence that Island (1) acquired or used a trade secret, (2) did so without Anvil's express or implied consent, and (3) did so while knowing or having reason to know that Island acquired knowledge of the trade secret using improper means or under circumstances that gave rise to a duty to maintain the trade secret's secrecy or limit its use.

To "know" means to have actual knowledge of or to be aware of some fact.

To have "reason to know" means to have actual knowledge or knowledge sufficient that a reasonable person would have inquired further.

Additionally, under the law, more than one person can rightfully possess a trade secret.

If you find by the greater weight or preponderance of the evidence that Island misappropriated a trade secret which Anvil owned or possessed, the second element is satisfied.

R.  <u>TUTSA Third Element – Resulting Detriment</u>

In order to establish the third element, Anvil must establish by the preponderance of the evidence that Island's misappropriation proximately caused economic harm or detriment to Anvil.

A "proximate cause" of detriment or economic harm is a cause which, in natural and continuous sequence, produces a harm or detriment, and without which the harm or detriment would not have occurred.  In other words, it must be true that the detriment would not have occurred without the misappropriation, but it must also be true that the misappropriation did not lead to the detriment through an unforeseeable and indirect chain of events.  Harm or detriment can be caused by the acts or omissions of one or more persons acting at the same or different times.

Under the TUTSA, it is inherent that there is harm to the owner of a trade secret if there was misappropriation of a trade secret.

If you find that Island misappropriated a trade secret and that the misappropriation proximately caused harm or detriment to Anvil, you will have found Island liable for trade secret misappropriation under the TUTSA.

## VI.     DAMAGES

A.  <u>Consider Damages Only If Necessary</u>

I will now instruct you on the law as it relates to damages.  If a party has proven by a preponderance of the evidence that another party is liable on a claim, then you must determine the damages, if any, to which the party is entitled.  You must do this only under the instructions I will give you as to how to calculate damages.  You should not infer that Anvil is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Anvil is entitled to recovery.

B.  <u>Multiple Claims – No Duplicate Damages</u>

At the outset, I instruct you that you cannot award compensatory damages more than once for the same loss, harm, or detriment.  For example, if Anvil were to prevail on two claims and establish a total injury of one dollar, you could not award Anvil one dollar of compensatory damages on both claims; it is only entitled to be made whole again, not to recover more than it lost.

However, the misappropriation of different trade secrets can lead to different damages.  Here, Anvil has alleged the misappropriation of multiple trade secrets so each misappropriation may have a separate damage.

For example, Anvil has alleged the misappropriation of customer and/or sales information and of information relating to where Anvil's products were manufactured.  Therefore, if you were to ultimately find that Island had misappropriated both trade secrets, Anvil may recover damage for the misappropriation of customer and/or sales information and a separate damage for the misappropriation of information relating to where Anvil's products were manufactured, if Anvil establishes there were, in fact, separate and distinct damages.

C.  <u>No Speculative Damages</u>

You may not award remote or speculative damages.  You may not, therefore, include any damages to compensate for losses or harms that, although possible, are based on conjecture, speculation, or are not reasonably certain.

To state this principle in another way, damages are prohibited as speculative when their existence is uncertain, but they are permitted when only their amount is uncertain.  Mathematical certainty is not required.  Instead, the amount of damages must be shown with such reasonable degree of certainty as the situation permits.

In determining whether the proof meets the requisite degree of certainty, you may consider whether a party is responsible for creating the difficulty in ascertaining the exact amount of damages.  If you make that determination, then you may, but you are not required to, resolve any doubt about the amount of damages against the party responsible for the difficulty.

D.  <u>Reasonable Certainty</u>

A party is not entitled to recover damages for a particular loss or type of harm unless the party proves that it is reasonably certain that the party has suffered such a loss or type of harm as a result of an action or inaction by the accused party.  However, once a party proves that it is reasonably certain that the party has suffered a particular loss or type of harm as a result of an action or inaction by the accused party, the law does not require the party to prove the exact amount of that loss or harm.

If it is reasonably certain that the party has suffered a particular loss or type of harm as a result of a wrongful action or failure to act by the accused party, the injured party is entitled to recover damages for that loss or harm as long as there is some reasonable basis for estimating or approximating the amount of the loss or harm.  A party may not be denied damages merely because the amount of the loss or harm is uncertain or difficult to determine.

E.   <u>Trade Secret Misappropriation Damages</u>

If you find that Island is liable to Anvil for misappropriation of trade secrets, then you should consider whether Anvil has suffered monetary damages as a result of that misappropriation.

The party seeking damages has the burden to prove to you that it has suffered harm due to the misappropriation of its trade secrets.  Damages are designed to restore an injured party to the position it would have occupied had the misappropriation not occurred.

In regard to Anvil's claim for misappropriation of trade secrets, you may award damages for:

1.   Actual loss to Anvil, as compared to the position it would have occupied had the misappropriation not occurred; and

2.   Benefits gained by Island that have not been taken into account in computing Anvil's actual loss.

Alternatively, instead of these measures of misappropriation damages, you may award Anvil damages in the amount of a reasonable royalty for Island's use or disclosure of a trade secret. If you award Anvil a reasonable royalty, then you may not award it any damages under the other two measures of damages laid out earlier.

F.   <u>Trade Secret Misappropriation Damages – Standard of Proof</u>

Because damages in trade secret cases may be difficult to compute, Anvil only has to provide a reasonable basis from which an amount of damages can be inferred or approximated. Anvil does not have to prove the exact amount of its damages or prove these damages with mathematical certainty.

I caution you again, however, that you may not award damages based on speculation. Any award of damages must be reasonable in light of all of the evidence in this case. It is Anvil's burden, not Island's, to demonstrate the amount of appropriate damages.

G.  <u>Trade Secret Misappropriation Damages – Anvil's Actual Losses</u>

Anvil claims that it has suffered actual monetary loss from misuse of its trade secrets.  This actual loss can include both out-of-pocket expenses as well as lost profits.

If you find, for example, that Anvil would have realized profits from using trade secrets in its business and that it has now lost those profits due to misappropriation by Island, then you may award "actual loss" damages in the amount of Anvil's lost profits for the time period that you determine is appropriate.

Remember, however, that any award of damages for trade secret misappropriation must be reasonable and must not be based on speculation.

H.  <u>Trade Secret Misappropriation Damages – Island's Additional Gain or Benefit</u>

In measuring Anvil's damages, you may consider what benefit Island has gained from misuse of Anvil's trade secrets.  As a measure of Anvil's damages, you may award Anvil the amount of Island's monetary gain, if any, attributable to the misappropriation and not taken into account in computing Anvil's actual loss.

Remember that Anvil has the burden of establishing the benefits Island gained as a result of misappropriation.  Island has the burden of establishing any portion of those benefits not attributable to the misappropriation of trade secrets.

I. <u>Trade Secret Misappropriation Damages – Reasonable Royalty Rate</u>

A reasonable royalty rate is the amount Anvil would have agreed to receive from a contract with Island that permitted Island to use Anvil's trade secrets for the time period at issue in this lawsuit.

You may consider, in awarding such damages, the cost that Island would have incurred through its own experimentation or through other lawful means to create the trade secret at the time it was misappropriated.  You may also consider the value of the trade secret that was taken by the infringer.

J.   <u>Double Recovery Prohibited</u>

Remember, you may not award duplicate (or double) damages for the same injury.  For example, if you find for Anvil that Island misappropriated its trade secrets under the DTSA, you may not count twice Anvil's damages.  In other words, if the only damages for any trade secrets misappropriation under the TUTSA are the same damages you would also award for the DTSA and you cannot separate the two sets of damages, Anvil can only recover once for those damages against Island.

K.   <u>Trade Secret Misappropriation Damages – Willful and Malicious Misappropriation</u>

Anvil also seeks an award of "exemplary" damages for misappropriation of trade secrets. Exemplary damages may be considered if, and only if, Anvil has shown by "clear and convincing evidence" that Island has acted both willfully and maliciously.  An act is done "willfully" if it is done voluntarily and intentionally and with the specific intent to commit such an act.  An act is done "maliciously" if it is prompted or accompanied by such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Clear and convincing evidence is a different and higher standard than preponderance of the evidence.  It means that Island's wrongful conduct, if any, must be so clearly shown that there is no serious or substantial doubt about the correctness of the conclusions drawn from the  evidence. A way to think about the clear and convincing standard is to consider it in light of another standard you may have heard of that applies in criminal cases – the beyond a reasonable doubt standard. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

For exemplary damages to be awarded, you must determine that Anvil has proven by clear and convincing evidence that Island willfully and maliciously misappropriated Anvil's trade secret(s).

## VII.   VERDICT

Finally, ladies and gentlemen, we come to the point where we will discuss the form of your verdict and the process of your deliberations.  You will be taking with you to the jury room a verdict form that will reflect your findings.  The verdict form reads as follows:

[Read Verdict Form]

You will be selecting a presiding juror after you retire to the jury room.  That person will preside over your deliberations and be your spokesperson here in court.  When you have completed your deliberations, your presiding juror will fill in and sign the verdict form.

Each of you should deliberate and vote on each issue to be decided.

Before you return your verdict, however, each of you must agree on the answer to each question so that each of you will be able to state truthfully that the verdict is yours.

The verdict you return to the Court must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to each answer.  Your verdict must be unanimous.

It is your duty to consult with one another and to reach an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and to change your opinion if you are convinced that it is not correct.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We will be sending with you to the jury room all of the exhibits in the case.  You may not have seen all of these previously and they will be there for your review and consideration.  You

may take a break before you begin deliberating, but do not begin to deliberate and do not discuss the case at any time unless all of you are present together in the jury room.  Some of you have taken notes.  I remind you that these are for your own individual use only and are to be used by you only to refresh your recollection about the case.  They are not to be shown to others or otherwise used as a basis for your discussion about the case.

If a question arises during deliberations and you need further instructions, please write your question on a sheet of paper, knock on the door of the jury room, and give the question to the court security officer.

I will review your question, and after consulting with all counsel in the case, will either respond to your question in writing or have you return to the courtroom for further oral instructions. Please understand that I may only answer questions about the law and I cannot answer questions about the evidence.  I caution you, however, that with regard to any message or question you might send me, you should not tell me your numerical division at the time.

I remind you that you are to decide this case based only on the evidence you have heard in court and on the law I have given you.  You are prohibited from considering any other information and you are not to consult any outside sources for information.  You must not communicate with or provide any information, photographs, or video to anyone by any means about this case or your deliberations.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone or computer; the Internet, any text or instant messaging service; or any chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate with anyone or to conduct any research about this case.

I.    INTRODUCTION ..................................................................................................... 1

II.   PARTIES ................................................................................................................ 2

III.  GENERAL INSTRUCTIONS ............................................................................... 3

    A.   Organization Not to Be Prejudiced ................................................................. 3

    B.   Organizations/Corporations Act Through Their Authorized Employees or Agents ........... 4

    C.   Geographic Ties Are Not Relevant .................................................................. 5

    D.   Burden of Proof and Consideration of the Evidence ....................................... 6

    E.   Credibility and Weighing of Evidence ............................................................ 7

    F.   Impeachment – Inconsistent Statements or Conduct ....................................... 9

    G.   Direct and Circumstantial Evidence .............................................................. 10

    H.   Evidence .......................................................................................................... 11

    I.    "Inferences" Defined ..................................................................................... 12

    J.    Statements and Arguments of Counsel ........................................................... 13

    K.   Totality of the Evidence ................................................................................. 14

    L.   Juror Notes ...................................................................................................... 15

    M.   Comments by the Court .................................................................................. 16

    N.   Opinion Testimony ......................................................................................... 17

    O.   Demonstrative Charts and Summaries ........................................................... 18

    P.   Background on the False Claims Act .............................................................. 19

IV.   STATEMENT OF THE CASE AND STIPULATED FACTS ........................... 21

    A.   Statement of the Case ..................................................................................... 21

    B.   Stipulated Facts .............................................................................................. 22

V.    GENERAL INSTRUCTIONS ON THE APPLICABLE LAW ......................... 26

    A.   Legal Theories of the Case ............................................................................. 26

    B.   Nature of the Action ....................................................................................... 27

    C.   DTSA – Misappropriation of Trade Secrets .................................................. 28

    D.   DTSA First Element – Existence of a Trade Secret ....................................... 29

    E.   DTSA First Element – (1) Reasonable Efforts to Maintain Secrecy .............. 30

    F.   DTSA First Element – (2) Independent Economic Value Derived from Secrecy ........... 31

    G.   DTSA First Element – Factors in Determining the Existence of a Trade Secret ........... 32

    H.   DTSA First Element – Anvil's Alleged Trade Secrets .................................... 33

    I.    DTSA Second Element – Misappropriation of the Trade Secret .................... 34

    J.    DTSA Third Element – Interstate Commerce ................................................ 35

K.  TUTSA – Misappropriation of Trade Secrets ................................................... 36

L.  TUTSA First Element – Existence of a Trade Secret ....................................... 37

M.  TUTSA First Element – Independent Economic Value Derived from Secrecy ............... 38

N.  TUTSA First Element – Reasonable Efforts to Maintain Secrecy ..................... 39

O.  TUTSA First Element – Factors in Determining the Existence of a Trade Secret ........... 40

P.  TUTSA First Element – Anvil's Alleged Trade Secrets ................................... 41

Q.  TUTSA Second Element – Misappropriation of the Trade Secret ................................... 42

R.  TUTSA Third Element – Resulting Detriment .................................................. 43

**VI.  DAMAGES** ............................................................................................. **44**

A.  Consider Damages Only If Necessary ............................................................ 44

B.  Multiple Claims – No Duplicate Damages ..................................................... 45

C.  No Speculative Damages ................................................................................ 46

D.  Reasonable Certainty ..................................................................................... 47

E.  Trade Secret Misappropriation Damages........................................................ 48

F.  Trade Secret Misappropriation Damages – Standard of Proof ....................... 49

G.  Trade Secret Misappropriation Damages – Anvil's Actual Losses ................ 50

H.  Trade Secret Misappropriation Damages – Island's Additional Gain or Benefit .............. 51

I.  Trade Secret Misappropriation Damages – Reasonable Royalty Rate ............ 52

J.  Double Recovery Prohibited .......................................................................... 53

K.  Trade Secret Misappropriation Damages – Willful and Malicious Misappropriation ...... 54

**VII. VERDICT** ............................................................................................... **55**